UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY BRIGGS, | ) |
| Plaintiff, | ) No. CV-06-0081-MWL |
| | ) |
| v. | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment,
noted for hearing without oral argument on September 18, 2006.
(Ct. Rec. 9, 12).  Plaintiff Timothy Briggs ("Plaintiff") filed a
reply on September 8, 2006.  (Ct. Rec. 14).  Attorney Maureen J.
Rosette represents Plaintiff; Special Assistant United States
Attorney Carol A. Hoch represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge. (Ct. Rec. 3).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 12)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).

1                          **JURISDICTION**

2        On December 20, 2002, Plaintiff's father, Randy Briggs, filed

3   an application for Child's Insurance Benefits (AR 82-84). On

4   December 31, 2002, Randy Briggs filed an application on his son's

5   behalf for Supplemental Security Income ("SSI"), alleging

6   disability since birth due to anger problems. (Administrative

7   Record ("AR") 521-523).  The applications were denied initially

8   and on reconsideration. Plaintiff's request for a hearing was

9   untimely filed, but the Administrative Law Judge ("ALJ") found

10  that plaintiff established good cause for the late filing. (AR

11  22).

12       On December 2, 2004, Plaintiff appeared before ALJ Mary B.

13  Reed, at which time testimony was taken from plaintiff,

14  plaintiff's father, medical expert Allen Bostwick, Ph.D., and

15  vocational expert Daniel McKinney.  (AR 534-586).  On May 19,

16  2005, the ALJ issued a decision finding that plaintiff was not

17  disabled.  (AR 19-32).  The Appeals Council denied a request for

18  review on January 20, 2006. (AR 8-10).  Therefore, the ALJ's

19  decision became the final decision of the Commissioner, which is

20  appealable to the district court pursuant to 42 U.S.C. § 405(g).

21  Plaintiff filed this action for judicial review pursuant to 42

22  U.S.C. § 405(g). (Ct. Rec. 1).

23                     **STATEMENT OF FACTS**

24       The facts have been presented in the administrative hearing

25  transcript, the ALJ's decision, the briefs of both plaintiff and

26  the Commissioner and will only be summarized here.  Plaintiff was

27  24 years old on the date of the hearing.  (AR 23).

28       At the administrative hearing held on December 2, 2004,

plaintiff testified that on occasion he worked approximately once per month with his uncle cleaning houses after people moved out. (AR 544). During the previous summer he worked with his father from 2 to 4 hours a day returning grocery shopping carts. (AR 545-546). Plaintiff testified that a couple of weeks prior to the hearing, he had applied for a telemarketing job but was not hired. (AR 551). He was on a waiting list with the Department of Vocational Rehabilitation. (AR 551-552). Plaintiff testified, "I can work. It's just I'm having problems finding work." (AR 552). Plaintiff testified that he had not been slamming walls and had not started anything violent recently: "probably a long time ago when I was in school." (AR 554-555). Plaintiff testified that he has friends, and they play video games and pool. (AR 556). He admitted that sometimes he yells at his father, and had hit his father after his father hit him. (AR 557). Plaintiff said that his physician told him not to lift more than 50 pounds. (AR 557).

Plaintiff's father and nonlawyer representative, Randy Briggs, testified that two years earlier plaintiff violently destroyed property, and within the last year destroyed a stove by breaking off the oven door. (AR 558). In the past plaintiff threw a lawn mower that would not start. (AR 558-559). When not taking Prozac, "his attitude is just totally really destructive." (AR 560). Additional lay testimony was presented in the form of letters by his father's girlfriend, also referred to in the record as plaintiff's stepmother, ValaRae VanCamp (AR 169-170, 309); plaintiff's mother, Carol Briggs, (AR 175-176, 199-210); family friend Ginger Joy (AR 195-196); plaintiff's older brother Dale (AR 217, 308); plaintiff's father (AR 222, 311-313); neighbor April

1    Parker (AR 247-254); family friend Donna Buck (AR 255-260);

2    acquaintance Alvin Roger (AR 314), and plaintiff's younger brother

3    Benjamin. (AR 315-316).

4         Medical expert Allen Bostwick, Ph.D., and vocational expert

5    Daniel McKinney testified at the administrative hearing held on

6    December 2, 2004. (AR 563-576; 577-582).

7                        **SEQUENTIAL EVALUATION PROCESS**

8         The Social Security Act (the "Act") defines "disability" as

9    the "inability to engage in any substantial gainful activity by

10   reason of any medically determinable physical or mental impairment

11   which can be expected to result in death or which has lasted or

12   can be expected to last for a continuous period of not less than

13   twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

14   Act also provides that a Plaintiff shall be determined to be under

15   a disability only if his impairments are of such severity that

16   Plaintiff is not only unable to do his previous work but cannot,

17   considering Plaintiff's age, education and work experiences,

18   engage in any other substantial gainful work which exists in the

19   national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20   Thus, the definition of disability consists of both medical and

21   vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156

22   (9th Cir. 2001).

23        The Commissioner has established a five-step sequential

24   evaluation process for determining whether a person is disabled.

25   20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is

26   engaged in substantial gainful activities.  If he is, benefits are

27   denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he

28   is not, the decision maker proceeds to step two, which determines

whether Plaintiff has a medically severe impairment or combination
of impairments.    20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.    If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.    20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.    If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work he has performed in the past.    If plaintiff is
able to perform his previous work, he is not disabled.    20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).    At this step,
plaintiff's residual functional capacity ("RFC") assessment is
considered.    If plaintiff cannot perform this work, the fifth and
final step in the process determines whether plaintiff is able to
perform other work in the national economy in view of his residual
functional capacity and his age, education and past work
experience.    20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
*Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

*Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

With regard to the application for Childhood Disability Benefits, additional issues are whether the claimant is the child of the wage earner, is unmarried (unless one of the exceptions in 20 C.F.R. § 404.352(b)(2) applies), has established he was dependent on the wage earner, and is under a disability that began before the claimant reached age 22, and persisted thereafter to within twelve months of the application. 42 U.S.C. §§ 402(d), 423(d), 20 C.F.R. §§ 404.350, 404.351(b). The standard of disability is the same for an adult disabled child as it is for a wage earner. 20 C.F.R. §§ 404.1505 et seq.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the Court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.*
*Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.*
*Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

     It is the role of the trier of fact, not this Court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the Court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is

conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

At the outset the ALJ found that plaintiff meets all of the threshold requirements for Childhood Disability Benefits. 42 U.S.C. §§ 402(d), 423(d); 20 C.F.R. § 404.351(b). (AR 23).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date, his date of birth, November 3, 1980. (AR 23). At step two, the ALJ determined that Plaintiff suffers from severe mental impairments and scoliosis. (AR 27). The ALJ found that plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments. (AR 27).

The ALJ concluded that plaintiff has the RFC to perform work at the medium level of exertion, meaning that he is able to lift no more than 25 pounds frequently or 50 pounds occasionally. He is moderately limited in his ability to understand, remember and carry out written detailed instructions, and slightly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (AR 30). Plaintiff is also limited in that, while he has a high school education, his reading skills are at the 6th grade level, and his math and language skills are at the 4th grade level. (AR 27, 32). At step four of the sequential evaluation process, the ALJ found that plaintiff has no past relevant work. (AR 30). At step five the ALJ relied on the testimony of vocational expert Daniel McKinney and determined that because there are jobs plaintiff can perform that exist in significant numbers both regionally and nationally, plaintiff was

not disabled within the meaning of the Social Security Act and was thus not entitled to childhood disability or to SSI benefits. (AR 31).

**ISSUES**

Plaintiff contends that the ALJ erred as a matter of law. Specifically, he argues that:

1. The ALJ erred by relying on the testimony of the medical expert in assessing plaintiff's limitations;

2. The ALJ erred by failing to properly credit the opinions of Dr. Bailey, Dr. Beaty, and Dr. Kester; and

3. The ALJ erred by failing to provide germane reasons for rejecting the opinions of the lay witnesses.
(Ct. Rec. 10, pp. 8-15).

This court must uphold the ALJ's determination that plaintiff is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Weighing the Medical Expert's Testimony**

Plaintiff contends that the ALJ erred by placing too much weight on the opinion of the testifying medical expert, Allen Bostwick. (Ct. Rec. 10, pp. 8-13). The Commissioner responds that the ALJ properly weighed Dr. Bostwick's opinion along with the other medical evidence when assessing plaintiff's RFC. (Ct. Rec. 13, pp. 6-14).

The ALJ found that the record reflects that plaintiff suffers from the severe impairments of scoliosis and mental impairments. (AR 27). The ALJ observed Dr. Bostwick's testimony that plaintiff

had a history of angry outbursts, generally associated with
relatives and close associates. The record did not disclose
evidence of difficulties with peers or authority figures.
Plaintiff also had a history of learning disorders in math and the
written word. (AR 27).  The ALJ notes that Dr. Bostwick diagnosed
plaintiff with a mild personality disorder with an intermittent
explosive disorder. (AR 27).

The ALJ pointed out Dr. Bostwick's testimony that plaintiff
participated in counseling in anger management and was able to
have self-control upon discharge. (AR 27).  The ALJ noted Dr.
Bostwick's opinion that plaintiff's diagnosis of borderline
intellectual functioning was based on inconsistent scores on
intelligence tests. The ALJ found that clinical examination,
plaintiff's demonstrated functioning, and recent test results do
not support a diagnosis of borderline intellectual functioning.
(AR 27).  The ALJ observed that Dr. Bostwick opined that
plaintiff's mental impairments result in a mild restriction of
activities of daily living (due to difficulty with reading and
math), mild difficulties in maintaining social functioning
(impulsivity, increased with family members, but alleviated with
Prozac), mild deficiencies of concentration, persistence or pace,
and no episodes of decompensation of extended duration. (AR 27).
The ALJ observed Dr. Bostwick's opinion that plaintiff was
moderately limited in his ability accept instructions and respond
appropriately to criticism from supervisors.  (AR 27).

The Ninth Circuit has held that "[t]he opinion of a
nonexamining physician cannot by itself constitute substantial
evidence that justifies the rejection of the opinion of either an

examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ thoroughly summarized the record in detail (AR 24-30) and, as noted by the Commissioner, found that Dr. Bostwick's opinion was consistent with the opinions of examining Drs. Lauby and Toews. (AR 29).

Gary Lauby, Ph.D., examined plaintiff on May 1, 2000. (AR 333-338). Plaintiff told Dr. Lauby he achieved significant gains from counseling at Spokane Mental Health. (AR 333). The ALJ notes Dr. Lauby's observation that the information did not suggest that the plaintiff experienced any difficulties with concentration or persistence, his social interaction was appropriate and his adaptation in the community was fair. No limitations in the ability to learn, reason, understand and remember were noted. (AR 29)(citing Exhibit 3F which is AR 333-338).

Jay Toews, Ed.D. evaluated plaintiff on October 30, 2001. (AR 363). Plaintiff told Dr. Toews he has anger problems but he denied becoming assaultive. (AR 363). The ALJ noted Dr. Toews' opinion that plaintiff is capable of remembering multi-step instructions, relating to supervisors and co-workers, getting along with the general public, and persisting and maintaining pace. (AR 29)(citing Exhibit 5F which is AR 363-366).

Dr. Bostwick's assessed limitations are greater than those assessed by either of the examining physicians Dr. Lauby or Dr. Toews. For example, the ALJ adopted Dr. Bostwick's opinion that plaintiff's mental impairments result in a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace, and moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors (AR 27); whereas Dr. Lauby assessed plaintiff as able to learn and complete projects such as generously-timed assembly line projects on a level of success competitive with his peers. (AR 338). Dr. Toews opined that plaintiff is able to get along with the general public, that his attention and concentration are normal, that his persistence and pace are not limited, and that plaintiff is a good candidate for DVR. (AR 366). The limitations assessed by the testifying medical expert are greater than those assessed by two examining physicians. Plaintiff's contention that the ALJ erred by adopting the opinion of the testifying medical expert to the exclusion of the other evidence is not supported by the record.

**B. Weighing Opinions of Drs. Bailey, Beaty and Kester**

Plaintiff contends that the ALJ improperly rejected the opinions of James Bailey, Ph.D, Howard Beaty, Ph.D., and Gene Kester, M.D. (Ct. Rec. 10, p. 12-13).  The Commissioner responds that the ALJ appropriately weighed all of the medical evidence. (Ct. Rec. 13, p. 11-14).

In a report dated February 17, 2003, Dr. Bailey opined that plaintiff was independent in his activities of daily living, but was "probably limited [socially] from public contact . . ."  The ALJ notes Dr. Bailey's suggestion that the plaintiff was "likely able to do some nonacademic, more simple tasks at a slower pace." (AR 29). The ALJ rejects the limitation on public contact because, as she correctly points out, plaintiff's angry outbursts are directed more toward family and friends than the general public, and there is nothing in the record to support the limitation. (AR 29). Although not given as a reason for discounting Dr. Bailey's opinion, the ALJ additionally noted that Dr. Bailey's examination was undertaken to determine plaintiff's eligibility for public assistance, whereas those of Drs. Lauby and Toews were not. (AR 27).  Similarly, evidence in the record supports Dr. Bostwick's, rather than Dr. Bailey's, limitation with respect to pace.  The ALJ rejected the limitations assessed by Dr. Bailey because they are not supported by the record and are inconsistent with the opinions of other examining physicians Dr. Toews and Dr. Lauby. The ALJ is not required to credit unfounded medical opinions.

With respect to the opinions of Drs. Beaty and Kester, the Commissioner notes that they are both State agency consultants and non-examining sources who completed a psychiatric review technique

form (PTRF) before all of the evidence had been submitted. (Ct. Rec. 13, pp. 11-13). The Commissioner notes that treatment records, a psychological report by Frank Rosekrans, Ph.D., and the testimony of plaintiff and his father were all considered by Dr. Bostwick but not by Drs. Beaty and Kester. (Ct. Rec. 13, p. 11-12).

The ALJ rejected the opinions of Drs. Beaty and Kester noting: "the assessment of the non-examining state agency medical consultants is internally inconsistent." (AR 29). The inconsistency found by the ALJ is that while both doctors recommended that plaintiff work relatively alone, with only superficial interactions with co-workers and the general public, they also note plaintiff's angry outbursts are directed at family and friends rather than the general public. (AR 420).  The ALJ observed that these assessments are not consistent with the other evidence and  the functional restrictions are not explained (AR 29-30).

The record supports the ALJ's finding that plaintiff is not limited in his ability to generally interact with the public. Plaintiff plays basketball, pool and video games with friends. (AR 337, 556). Plaintiff has lots of friends. (AR 343). Plaintiff reports no generalized difficulty getting along with people, has good relationships with his peers and is able to work. (AR 363-364). Plaintiff completed court-ordered community service hours by picking up litter with a work crew. He had no problems with his co-workers. (AR 555-556). The record fully supports the ALJ's rejection of the limitations assessed by non-examining agency physicians Beaty and Kester in favor of those based on the

- 14 -

opinions of Drs. Bostwick, Lauby and Toews.

**C. Weighing Lay Testimony**

Plaintiff contends that the ALJ failed to properly credit the lay testimony. (Ct. Rec. 10, pp. 13-15). The Commissioner responds that the ALJ discussed many of the statements by lay witnesses and "concluded that the lay witness statements and testimony were consistent with the evidence of record, the testimony of the medical expert, and with [her] findings." (Ct. Rec. 13, p. 14).

The ALJ summarized much of the lay testimony, which she credited, as establishing that plaintiff had a history of temper outbursts, usually directed at his father and his father's girlfriend; a history of throwing and slamming things in his home, and punching holes in the walls of his home. (AR 28-29). The ALJ observed that the statements of friends and neighbors established that plaintiff's behavior with them was appropriate and nonviolent, and that the displays of temper they saw were limited mainly to plaintiff's family members. (AR 29).

Specifically, the ALJ cited plaintiff's father's testimony that two years earlier, when angry, plaintiff broke a couple of windows when cleaning a house. (AR 28). Several times he destroyed things. In early 2004, plaintiff tried to help his uncle mow lawns, but he threw a lawn mower. Plaintiff's father testified that plaintiff was angry at his uncle's friend who jumped on him in April. He fights with his brothers. Plaintiff's father testified that when his son is off of Prozac,[1] he is very

---

[1] The record reflects that plaintiff does well when on his medications. (AR 289, 416, 417, 442, 451).

destructive. With respect to the letters by plaintiff's mother, plaintiff's father testified that she has problems overstating things. (AR 28).

The ALJ cited the statement of plaintiff's older brother Dale that plaintiff experiences mood swings and temper flares, and when not on medication, plaintiff is violent with things. (AR 28) (citing AR 308). The ALJ cited the statement of plaintiff's younger brother Benjamin that plaintiff has a bad temper and had thrown him during a fight. Plaintiff threw things when angry. He was immature. However, the ALJ notes, this witness also stated he believed that plaintiff would be able to maintain employment, "but he just doesn't have the motivation to." (AR 28)(citing Exhibit 34E which is AR 315-316).

The ALJ cited the statement from Alvin Roger, who occasionally worked with the plaintiff, that plaintiff would quit working after 30 minutes saying it was too hard and boring and that he was tired. (AR 28)(citing Exhibit 33E which is AR 314). The ALJ cited the statement from neighbor April Parker that in the past plaintiff had memory problems. She had read his homework to him. Plaintiff is moody and will lose his temper and break things or yell at his father or stepmother. He acts immature for his age and has little or no impulse control. When he is angry at his father, plaintiff plays video games at Ms. Parker's home. (AR 28)(citing Exhibit 22E which is AR 247-254). The ALJ cited the statement from family friend Ginger Joy that plaintiff's behavior worsened after his grandmother died. (AR 28)(citing Exhibit 12E which is AR 195-196). The ALJ cited friend Donna Buck's statement that plaintiff seemed depressed. He was nonresponsive to his

parents. Ms. Buck had not seen plaintiff when he was angry "but I have seen what he has destroyed when his temper cuts loose." (AR 28)(citing Exhibit 23E which is AR 255-260).

The ALJ cited the statements of ValaRae VanCamp, plaintiff's father's girlfriend, that plaintiff had temper problems. She stated that, when angry, plaintiff would throw things like dishes, slam stuff around, or make holes in the walls. (AR 28)(citing Exhibits 7E and 31E which are AR 169-170 and AR 309-310). The ALJ cited the statements of plaintiff's mother, Carol Briggs, that plaintiff has a violent temper. She noted Ms. Briggs' statement that many family members had temper problems and considered the possibility that plaintiff's temper problems were hereditary. When plaintiff was with Ms. Briggs, she had him take a multivitamin with minerals and then "he's fine, happy, smiling and easy to get along with." Ms. Briggs said Plaintiff liked to run around at night. (AR 28)(citing Exhibit 9E, AR 175-176, and Exhibit 14E, AR 199-210).

The ALJ observed that plaintiff's father completed the disability reports, work history reports, and reports of activities of daily living on plaintiff's behalf. He also provided a statement that plaintiff was suspended from junior high school when he put hand lotion in a teacher's cup. When plaintiff was in high school he told his teacher that the assigned book was stupid and tossed a chair and a desk across the room. Plaintiff and a female student were both suspended when plaintiff hit her in the back of the head with a closed fist. Plaintiff threatens to damage his friends' cars, but when they threaten to retaliate, "he quits instantly." (AR 29)(citing Exhibit 32E which is AR 311-313).

The ALJ concluded that the testimony and lay witness statements are consistent with other evidence. As noted, the lay evidence confirms plaintiff's history of temper outbursts, usually directed at his father and his father's girlfriend, and a history of throwing and slamming things in the home and punching holes in the walls of the home. (AR 29). Statements of nonfamily members establish that his behavior with them is appropriate and nonviolent. (AR 29). Dr. Bostwick diagnosed plaintiff with a mild personality disorder with an intermittent explosive disorder, and the ALJ accepted this diagnosis. (AR 27).

The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (emphasis added). The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

The ALJ explicitly discussed the lay testimony and credited it when she found it consistent with other evidence. The ALJ did not ignore or reject probative lay testimony. Accordingly, the ALJ did not err with regard to the lay witnesses' testimony.

The ALJ evaluated the evidence of record, considered the hearing testimony of plaintiff, his father, and the medical and vocational experts, as well as the statements submitted by lay witnesses, and concluded that plaintiff's mental impairments would allow him to work at a limited range of unskilled jobs at or below the medium level of exertion. (AR 30). The undersigned finds that the evidence of record supports the ALJ's determination.

1

**CONCLUSION**

2      Having reviewed the record and the ALJ's conclusions, this

3  Court finds that the ALJ's decision that plaintiff is capable of

4  performing a limited range of work at the medium level of exertion

5  is supported by substantial evidence and free of legal error.

6  Plaintiff is thus not disabled within the meaning of the Social

7  Security Act.  Accordingly,

8      **IT IS ORDERED**:

9         1.   Plaintiff's Motion for Summary Judgment (Ct. Rec.

10  9) is **DENIED**.

11         2.   Defendant's Motion for Summary Judgment (Ct. Rec.

12  12) is **GRANTED**.

13         3.   The District Court Executive is directed to enter

14  judgment in favor of Defendant, file this Order, provide a copy to

15  counsel for Plaintiff and Defendant, and **CLOSE** this file.

16      **DATED** this 28th day of December, 2006.

17

18                          s/Michael W. Leavitt
                            MICHAEL W. LEAVITT

19                  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28